# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CEMCO INVESTORS, LLC, et al. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 04 C 8211 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Cemco Investors, LLC[1] ("Cemco") brought this action against respondent, the United States of America, seeking, pursuant to I.R.C. § 6226 (2006), judicial review of a final partnership administrative adjustment ("FPAA") issued to Cemco by the Internal Revenue Service ("IRS"). In the FPAA, the IRS determined that Cemco was a sham partnership existing as an illegal tax shelter, disallowed certain items claimed by Cemco on its year 2000 Form 1065 tax return of partnership income, and assessed several penalties against Cemco for filing an inaccurate return. In this action, Cemco challenges several of the determinations made by the IRS in the FPAA. Both Cemco and respondent have moved for summary judgment. For the reasons set forth below, Cemco's motion for summary judgment is denied and respondent's motion for summary judgment is granted.

## I. BACKGROUND

This case centers on the tax implications of a series of business transactions that took place in December of 2000. The facts relating to these transactions, which are those

---

[1] Formally, the petitioner is actually Forest Chartered Holdings, Ltd., Cemco's tax matters partner that brought this action on behalf of Cemco, but the court refers to Cemco as the petitioner throughout this opinion.

material to the parties' respective summary judgment motions, are not in dispute; this case turns instead on the application and interpretation of specific portions of the Internal Revenue Code ("I.R.C.").[2]

Three entities were involved in the underlying transactions: Cemco, Cemco Investors Trust ("CIT"), and Cemco Investment Partners ("CIP"). Cemco was a limited liability company, CIT was a grantor trust, and CIP was a general partnership. The participants in all three entities were virtually the same. During the relevant time period, both Cemco and CIP consisted of only two partners: Steven Kaplan ("Kaplan") and Forest Chartered Holdings, Ltd. ("Forest"). CIT's beneficiaries were also Kaplan and Forest, and its trustee was Paul Daugerdas ("Daugerdas"). According to respondent, Forest was basically a shell company through which Daugerdas orchestrated the tax shelter scheme at the heart of this case; Daugerdas was Forest's president and sole shareholder, and the address Forest listed as its principal place of business was Daugerdas' residence.[3] Forest was the designated tax matters partner of both Cemco and CIP, and the year 2000 Form 1065 tax returns of partnership income of both Cemco and CIP were prepared and signed by Daugerdas on behalf of Forest.

On December 4, 2000, CIT entered into two foreign exchange digital option transactions with Deutsche Bank ("DB"), a German-based international bank, whereby

---

[2] The factual recitation is drawn from Cemco's Statement of Undisputed Material Facts, respondent's Statement of Material Facts, the Declaration of Paul M. Daugerdas, and the Fifth Declaration of John Lindquist.
[3] According to respondent, the offsetting foreign currency option scheme discussed below was Daugerdas' brainchild. Respondent asserts that Kaplan agreed to invest with Daugerdas based on his understanding that Daugerdas would be using his money in an entirely different (and lawful) manner, that Kaplan was unaware of and did not agree that his money would be used in the transactions described below, and that Daugerdas ultimately defrauded Kaplan of $600,000. For present purposes, it is unimportant whether these allegations are true. That Cemco's, CIP's, and CIT's strings were being pulled by Daugerdas, not Kaplan, appears to be undisputed; Daugerdas' signed declaration filed in this case supports respondent's position that Daugerdas, a tax attorney, conceived of and carried out the transactions at issue. *See* Decl. Paul M. Daugerdas ¶¶ 13a-13e.

2

CIT simultaneously bought a digital foreign currency option for $3,600,000 (the "long" or "purchased" option) and sold a foreign digital currency option for $3,564,000 (the "short" or "sold" option). The following day, December 5, 2000, CIT assigned the offsetting option contracts to CIP. On December 18, 2000, CIP purchased 55,947.19 in euros ("€") for $50,000 through DB. CIP then terminated its and DB's rights and obligations under the option contracts by entering into a "Termination Agreement" with DB on December 19, 2000. Pet'r Statement Undisputed Material Facts ¶ 8d. On December 21, 2000, CIP was liquidated and ninety-nine percent of its property was distributed to CIT by way of a transfer from CIP's DB account to CIT's DB account. At the time of its liquidation, CIP's only assets were $45,847.27 and the €55,947.19 in euros CIP had purchased from DB. On December 26, 2000, CIT "contributed" the euros to Cemco, again by way of deposit to Cemco's DB account. *Id.* ¶8g. Finally, on December 29, 2000, Cemco sold the majority of the €55,947.19 in euros for $51,324.58.

Cemco filed its Form 1065 tax return of partnership income for the year ending December 31, 2000, in September of 2001. On that return, Cemco reported a loss of $3,563,211.71, which Cemco claimed was a net loss due to the disposition of non-functional currency under I.R.C. § 988 (2006)—the sale of the euros on December 29, 2000. According to Daugerdas, this loss is premised on the theory that the euros contributed to Cemco by CIT on December 26, 2000, had an adjusted basis of $3,614,536.29. Decl. Paul M. Daugerdas ¶ 13. Daugerdas' theory regarding the adjusted basis of the euros begins with CIP. Daugerdas asserts that CIP calculated the adjusted basis of the options assigned to it by CIT on December 5, 2000, at $3,600,000 by taking into account only the amount paid by CIT for the long, or purchased, option, and not the

amount CIT received for the short, or sold, option. *Id.* ¶ 13a-c. According to Daugerdas, when CIP was liquidated, the adjusted basis of the long option was assigned by operation of law to the €55,947.19 in euros CIP had purchased on December 18, 2000, giving the euros an adjusted basis of $3,614,536.29.[4] *Id.* ¶ 13d. The adjusted basis was then carried forward to Cemco when CIT contributed the euros to Cemco on December 26, 2000. *Id.* ¶ 13e. Thus, according to Daugerdas, Cemco's sale of the euros—which had an adjusted basis of $3,614,536.29—for $51,324.58 on December 29, 2000, resulted in a loss of $3,563,211.71 to Cemco. *Id.* ¶ 13.

On September 21, 2004, the IRS issued the FPAA from which this case arises to Forest, Cemco's tax matters partner. In the FPAA, the IRS determined that Cemco "was a sham, lacked economic substance, or, under § 1.701-2 of the Income Tax Regulations, was formed or availed of in connection with a transaction or transactions in taxable year 2000, a principal purpose of which was to reduce substantially the present value of its partners' aggregate tax liability"—in other words, that Cemco was an illegal tax shelter and would not be regarded as a partnership for tax purposes. Decl. Paul M. Daugerdas Ex. A. The FPAA disallowed both Cemco's claimed loss of $3,563,211.71 and its claimed capital contributions of $5,144,536, reducing both partnership items to zero. The FPAA also assessed four separate accuracy-related penalties pursuant to I.R.C. § 6662 (2006): a twenty-percent penalty for negligence, a twenty-percent penalty for substantial underpayment of tax, a twenty-percent penalty for substantial valuation misstatement,

---

[4] CIP's year 2000 Form 1065 tax return of partnership income reported distributions of property totaling $3,661,383. Cemco asserts that the total adjusted basis of CIP's assets at the time of liquidation, taking into account the value of the long option, was approximately $3,660,383. According to Cemco, the euros were assigned a basis of $3,614,536.29 "as a residual matter" under I.R.C. § 732 (2006) because CIP's assets consisted of only $45,847.27 and the euros. Pl.'s Mem. Supp. Mot. Summ. J. 4 n.4. The court notes that the parties' numbers do not perfectly match up, but exact numerical computation is not necessary for the court to rule upon the legal issues raised in the parties' motions.

and a forty-percent penalty for gross valuation misstatement. While the FPAA adjusted Cemco's year 2000 return, the IRS did not issue a similar FPAA to CIP.

On December 20, 2004, Cemco filed its petition seeking judicial review of the FPAA with this court. Cemco has since amended its petition twice with the court's permission. In its second amended petition, Cemco challenges the adjustments the FPAA made to Cemco's partnership items—i.e., the disallowance of Cemco's claimed capital contributions of $5,114,536 and the disallowance of Cemco's claimed loss of $3,563,211.71—as well as all of the accuracy-related penalties imposed by the FPAA. The portions of Cemco's second amended petition at issue in the parties' summary judgment motions are those challenging the disallowance of the $3,563,211.71 loss and the penalties for gross valuation misstatement and substantial valuation misstatement. *See* Second Am. Pet. ¶¶ 6b-6d.

## II. ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As noted above, none of the facts material to either party's motion for summary judgment are in dispute; the parties agree as to the underlying events upon which the FPAA is based. The parties do disagree vehemently, however, about the tax consequences that should flow from the relevant events. Each party has moved for summary judgment on the same two aspects of Cemco's second amended petition: (1) Cemco's challenge to the FPAA's disallowance of Cemco's claimed loss of $3,563, 211.71; and (2) Cemco's challenge to the FPAA's

5

imposition of accuracy-related penalties for substantial valuation misstatement and gross valuation misstatement. The court considers the parties' arguments with respect to each portion of Cemco's second amended petition in turn.

### A. Cemco's Claimed Loss of $3,563,211.71

Before the court considers the parties' disagreements regarding Cemco's claimed loss, it is important to highlight one point upon which they agree: the loss of $3,563,211.71 claimed on Cemco's year 2000 return was fictional. Of course, Cemco did not *actually* suffer a loss of $3,563,211.71 when it sold the euros because the euros were purchased for only $50,000 (by CIP) and the adjusted basis assigned to them by CIP (and carried forward to Cemco) did not take into account that CIT received $3,564,000 from the sale of the digital foreign currency option at the same time CIT purchased it. Cemco's argument for overturning the FPAA is not that it truly suffered a loss of $3,563,211.71, but that it was required to report such a loss because CIP determined that the euros had an adjusted basis of $3,614,536.29. At the outset, however, the court notes that it is undisputed that CIP's determination of the adjusted basis of the euros was premised on an outdated interpretation of I.R.C. § 752 (2006), the section dealing with the treatment of liabilities by partners and partnerships.

Until recently, the law respecting whether an option contract should be treated as a liability under section 752 actually supported CIP's position. In *Helmer v. Commissioner*, 34 T.C.M. (CCH) 727 (1975), the Tax Court held that a contingent obligation, such as a short or sold option, is not a liability under section 752 because a partnership's obligation under the option does not become fixed until the option is exercised. This principle was affirmed in multiple subsequent cases under section 752.

6

*See, e.g.*, *Long v. Comm'r*, 71 T.C. 1, 6-7 (1978), *aff'd in part*, 660 F.2d 416 (10th Cir. 1981) (holding that contingent obligations are not liabilities for purposes of increasing partnership basis until they become fixed or liquidated); *La Rue v. Comm'r*, 90 T.C. 465, 478 (1988) (obligations that are fixed but remain contingent are not liabilities under section 752); *Gibson Prods. Co. v. United States*, 637 F.2d 1041, 1049 (5th Cir. 1981) (contingent nature of a partnership obligation precludes treatment as a liability for tax purposes). For many years, the *Helmer* rule served as the definition of liability under section 752. *See* Assumption of Partnership Liabilities, 68 Fed. Reg. 37434 (June 24, 2003) ("There is no statutory or regulatory definition of liabilities for purposes of section 752."). Thus, under *Helmer* and its progeny, it would have been proper for CIP to ignore the short, or sold, option as a liability under section 752.

Shortly before the transactions underlying this case occurred, however, the IRS reversed its position regarding partnership liabilities under section 752, promulgating regulations designed to disallow losses such as those claimed by CIP and Cemco. On August 13, 2000, the IRS released IRS Notice 2000-44, 2000-2 C.B. 255 (the "Notice"); the Notice was published on September 5, 2000. In the Notice, the IRS discussed certain types of transactions designed to generate tax losses by "using [an] artificially high basis," and explained that such losses were not allowable and could result in penalties for taxpayers. *Id.* The Notice gave the following example of such a scheme:

> [A] taxpayer purchases and writes options and purports to create substantial positive basis in a partnership interest by transferring those option positions to a partnership. For example, a taxpayer might purchase call options for a cost of $1,000X and simultaneously write offsetting call options, with a slightly higher strike price but the same expiration date, for a premium of slightly less than $1,000X. Those option positions are then transferred to a partnership which, using additional amounts contributed to the partnership, may engage in investment activities.

7

> Under the position advanced by the promoters of this arrangement, the taxpayer claims that the basis in the taxpayer's partnership interest is increased by the cost of the purchased call options but is not reduced under § 752 as a result of the partnership's assumption of the taxpayer's obligation with respect to the written call options. Therefore, disregarding additional amounts contributed to the partnership, transaction costs, and any income realized and expenses incurred at the partnership level, the taxpayer purports to have a basis in the partnership interest equal to the cost of the purchased call options ($1,000X in this example), even though the taxpayer's net economic outlay to acquire the partnership interest and the value of the partnership interest are nominal or zero. On the disposition of the partnership interest, the taxpayer claims a tax loss ($1,000X in this example), even though the taxpayer has incurred no corresponding economic loss.

*Id.* The Notice further stated that purported losses resulting from "arrangements designed to produce noneconomic tax losses by artificially overstating basis in partnership interests" are not "bona fide losses" and therefore "are not allowable as deductions for federal income tax purposes." *Id.* In addition, the Notice stated that "the transactions may be subject to challenge under § 752, or under § 1.701-2 or other anti-abuse rules," and could result in penalties such as "the accuracy-related penalty under § 6662." *Id.*

In addition to the Notice, the Treasury Department published new regulations pertaining to section 752 on June 24, 2003. The new regulations altered the definition of liability under section 752 to include "any fixed or contingent obligation to make payment without regard to whether the obligation is otherwise taken into account for purposes of the Internal Revenue Code." Treas. Reg. §1.752-1(a)(4)(ii) (2003). Under this definition, "[o]bligations include . . . obligations under a short sale, and obligations under derivative financial instruments such as options, forward contracts, and futures contracts." 68 Fed.

Reg. 37434, Explanation of Provisions. Thus, "[t]he definition of liability contained in the[] . . . regulations does *not* follow *Helmer v. Commissioner*." *Id.* (emphasis added). The Treasury Department made the new definition of partnership liabilities retroactively applicable to assumptions of liability by partnerships between October 18, 1999, and June 24, 2003.[5] *See* Temp. Treas. Reg. § 1.752-6T(d) (2003); Treas. Reg. §1.752-6(d) (2003). Importantly, Treas. Reg. § 1.752-6 specifically refers to the transactions described in the Notice as obligations that must be taken into account by partnerships in determining liabilities under section 752. Treas. Reg. §1.752-6(b)(2).

In its opening brief, Cemco states that "[t]he return positions taken by CIP and [Cemco] did not take the sold option into account because of the rule of *Helmer*." Pet. Mem. Supp. Summ. J. 11. Cemco acknowledges that Treas. Reg. §1.752-6 reverses *Helmer* and requires "that these types of potential obligations [i.e., the short option] must be taken into account as liabilities in computing the basis of property contributed to a partnership." *Id.* at 12; *see also* Decl. Paul M. Daugerdas ¶ 14 ("If the rule respecting the treatment of liabilities set out in Treas. Reg. § 1.752-6T (June 2003) and Treas. Reg. § 1.752-6 (May 2005) is (retroactively) applied to [Cemco's] tax return for 2000 and that application is proper, the ordinary loss of $3,563,211.71 claimed on the return would be disallowed as determined by the IRS's FPAA."). Thus, there is no dispute regarding whether the calculations regarding the adjusted basis of the euros made

---

[5] Assumptions of liabilities by partnerships occurring after June 24, 2003, are governed by Treas. Reg. § 1.752-7 (2005).

by CIP and carried forward to Cemco were correct—under the regulatory regime described above, they clearly were not.

While Cemco does not argue that CIP's calculations were correct, it does disagree with the course of action taken by the IRS. Cemco's primary argument in support of its motion for summary judgment is that the IRS issued the FPAA to the wrong party. Cemco notes that the FPAA's disallowance of Cemco's claimed loss is premised on the IRS' position that the adjusted basis of the euros was miscalculated. According to Cemco, however, the fault for the euros' overstated basis lies with CIP because CIP is the party that failed to take the short option into account. Cemco also contends that the I.R.C. required it to assign the same adjusted basis to the euros as did CIP when the euros were contributed to Cemco. As a result, Cemco asserts, the IRS was required to issue a FPAA to CIP if it wished to alter the adjusted basis of the euros, and the IRS' failure to do so conclusively establishes the adjusted basis of the euros at $3,614,536.29. As detailed below, Cemco's theory consists of several nuanced procedural steps. Ultimately, however, the argument amounts to little more than a house of cards, for if any of the steps fail (and several do), Cemco's entire position collapses.

The first step in Cemco's line of reasoning involves the adjusted basis of the euros in the hands of CIP. Cemco contends that CIP assigned the euros an adjusted basis of $3,614,536,29 when CIP was liquidated because "the total tax basis of the CIP assets at the time of liquidation [was] $3,660,383" and CIP's only asset besides the euros was $45,847.27 in cash. Pet.'s Mem. Supp. Mot. Summ. J. 4 n.4. Cemco argues that CIP was required to assign the euros this adjusted basis

as a residual matter under I.R.C. §§ 732 and 988, which provide rules for allocating basis among partnership property and for computing gain or loss on foreign currency, respectively. This argument, however, presupposes that CIP had a basis of $3,600,000 in the long option to begin with. But, as noted above, CIP could not have had such a basis because § 752 and Treas. Reg. § 1.752-6 required CIP to account for the short option as a liability in determining the adjusted basis of its assets, a point which Cemco concedes.[6] Accordingly, the first link in Cemco's theory fails because the total tax basis of CIP's assets was *not* $3,660,383, and CIP was *not* required to assign the euros an adjusted basis of anything approaching $3,614,536.29.

Undeterred, Cemco points out that CIP *did* assign the euros an adjusted basis of $3,614,536.29, even if it was not supposed to. According to Cemco, CIP's determination with regard to the euros is important because Cemco was required to assign the euros the same adjusted basis when they were contributed to Cemco. Cemco cobbles together several different I.R.C. and regulatory provisions to support this argument. First, Cemco points to I.R.C. § 723, which provides, in relevant part: "The basis of property contributed to a partnership by a partner shall be the adjusted basis of such property to the contributing partner at the time of the contribution . . . ." Cemco contends that section 723 mandates that the euros be assigned an adjusted basis of $3,614,536.29 in the hands of Cemco. While section 723 states that a partnership's basis in contributed property should correspond to the adjusted basis of the property to the contributing partner, it does

---

[6] Cemco raises no argument regarding the propriety of applying I.R.C. § 752 (2006) or Treas. Reg. § 1.752-6 (2003) to CIP's computation of the adjusted basis of the euros, but instead argues that CIP's mistake should be isolated to CIP.

*not* state that a partnership is relieved from properly calculating the partner's adjusted basis in order to determine the partnership's basis in the contributed property, a distinction that is important for reasons that will be explained shortly.

Cemco expands upon its argument under section 723 by pointing to the unified partnership audit and litigation rules provided by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 402, 96 Stat. 324, 648-671 (codified as amended at I.R.C. §§ 6221-6234 (2006)) ("TEFRA"). Under TEFRA, "the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level." I.R.C. § 6221. The I.R.C. defines "partnership item" as "any item required to be taken into account for the partnership's taxable year . . . to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." I.R.C. § 6231. As the United States Court of Appeals for the Seventh Circuit has noted, this is "a rather tautological definition," which does little more than point to the regulations. *Kaplan v. United States*, 133 F.3d 469, 473 (1998). In this case, however, there is no dispute between Cemco and respondent as to whether the determinations relevant to this case are partnership items under the relevant Treasury regulations.

Under Treas. Reg. § 301.6231(a)(3)-1 (as amended in 1986), items relating to contributions to a partnership and distributions from a partnership are partnership items "to the extent that a determination of such items can be made

from determinations that the partnership is required to make." *Id.* § 301.6231(a)(3)-1(a)(4). The regulation provides that "[t]he basis to the partnership of contributed property" and "[t]he adjusted basis to the partnership of distributed property" are determinations the partnership is required to make with respect to contributions and distributions, respectively. *Id.* § 301-6231(a)(3)-1(c)(2)(iv), (c)(3)(4). Cemco points out that, under this regulation, CIP was required to determine the basis of the options contributed to it by CIT and the adjusted basis of its assets when it distributed them upon liquidation. To properly make this determination, CIP needed only to "apply Treas. Reg. § 1.752-6T (or, subsequently, its successor, Treas. Reg. § 1.752-6) to the options that were contributed to CIP on December 5, 2000. No further information [was] needed to determine the adjusted basis of the [e]uros." Pet. Mem. Supp. Summ. J. 7. Thus, because the adjusted basis of the euros can be determined from determinations CIP was required to (but did not properly) make, the adjusted basis of the euros is a partnership item of CIP. *See* Treas. Reg. § 301.6231(a)(3)-1(a)(4). Because the adjusted basis of the euros is a partnership item of CIP, Cemco argues, the IRS should have issued a FPAA to CIP if it wanted to alter the euros' tax treatment rather than proceeding against Cemco.

Respondent agrees with Cemco that the adjusted basis of the euros is a partnership item of CIP under the regulations. Resp. Mem. Opp'n Pet. Mot. Summ J. 3. However, respondent argues that the adjusted basis of the euros is *also* a partnership item of Cemco, and therefore the IRS could challenge the claimed basis of the euros by issuing a FPAA to *either* CIP *or* Cemco. *Id.*

Respondent is correct. As noted above, items relating to contributions to a partnership are partnership items to the extent they can be determined from determinations the partnership is required to make. Treas. Reg. § 301.6231(a)(3)-1(4)(i). Under the regulations, a partnership is required to determine "[t]he basis to the partnership of contributed property (*including necessary preliminary determinations, such as the partner's basis in the contributed property*). *Id.* § 301.6231(a)(3)-1(c)(2)(iv) (emphasis added). Moreover, "[t]he term 'partnership item' includes the accounting practices *and the legal and factual determinations* that underlie the determination of amount, timing, and characteristics of items of income, credit, gain, loss, deduction, etc." *Id.* § 301.6231(a)(3)-1(b) (emphasis added). "The critical element is that the partnership needs to make a determination with respect to a matter for the purposes stated; failure by the partnership actually to make a determination . . . does not prevent an item from being a partnership item." *Id.* § 301.6231(a)(3)-1(c)(1).

Under the above regulations, Cemco was required to correctly determine the basis of the euros contributed to it; Cemco could not simply carry over whatever basis the euros had been assigned by CIT or CIP under § 723, as it contends. Because Cemco was required to make this determination, the adjusted basis of the euros is a partnership item of Cemco. This partnership item includes the legal determinations (such as whether the short option was a liability) that underlie the adjusted basis of the euros. Therefore, the FPAA issued to Cemco is not premised on CIP's failures, as Cemco asserts. Rather, it is based on Cemco's

failure to properly determine the basis of the euros contributed to it, which it was required to do under Treas. Reg. § 301.6231(a)(3)-1.

The remainder of the provisions cited by Cemco likewise do not support its argument that it was required to report the basis of the euros consistently with CIP. Cemco points to Treas. Reg. § 301.6222(a)-1T (1987) and Treas. Reg. § 301.6222(a)-2T (1987), neither of which is applicable. Under the former, a partnership item is required to be treated on a partner's tax return consistently with the manner in which it is treated on the partnership's return. *See* Treas. Reg. § 301.6222(a)-1T(a). However, as pointed out by respondent, Cemco is not a partner in CIP, so this rule does not apply.

The same result follows with respect to Treas. Reg. § 301.6222(a)-2T, which requires an "indirect partner" to treat partnership items from a "source partnership" consistently with the manner in which the source partnership has treated them. *Id.* § 301.6222(a)-2T(a)-(b). A "source partnership" is the partnership "from which the partnership item originates." *Id.* § 301.6222(a)-2T(a). Cemco contends that it was required to report the adjusted basis of the euros consistently with CIP because the adjusted basis originated with CIP. The problem, however, is that Cemco is not an indirect partner of CIP. An indirect partner is "a person holding an interest in a partnership through 1 or more pass-thru partners." I.R.C. § 6231(a)(10). A pass-thru partner, in turn, is "a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership." *Id.* § 6231(a)(9). Cemco

did not hold an indirect interest in CIP, and so the consistent reporting provisions of Treas. Reg. § 301.6222(a)-2T do not apply.

Because the adjusted basis of the euros is a partnership item of Cemco, and because Cemco was not compelled to report the euros consistently with CIP, Cemco's argument that the IRS was required to proceed against CIP is erroneous. Cemco cites to Treas. Reg. § 301.6221-1T (1999) (temporary regulation applicable to partnership taxable years prior to October 4, 2001), which provides that the IRS generally cannot adjust the tax treatment of an item on a partner's return unless it first proceeds against the partnership. *See* Treas. Reg. § 301.6221-1T(a) (1999) *see also id.* § 301.6221-1T(c) (noting that adjustments related to partnership items "shall be made based on partnership level determinations. Partnership level determinations include all the legal and factual determinations that underlie the determination of any penalty, addition to tax, or additional amount . . . ."). But Cemco was not a partner of CIP, so the IRS was entitled to challenge the adjusted basis of the euros—which is the foundation upon which Cemco's claimed loss of $3,563,211.71 is built—in a FPAA issued to Cemco.[7] *See* I.R.C. § 6221. Therefore, Cemco's argument that the adjusted basis of the euros is conclusively established at $3,614,536.29 because the IRS did not challenge CIP's determination by way of an FPAA issued to CIP must fail. Accordingly, respondent's motion for summary judgment as to paragraph 6d of Cemco's second amended petition is granted and Cemco's motion for summary judgment on that same paragraph is denied.

---

[7] Cemco's argument that the penalties imposed by the FPAA are improper because they are based on events that occurred at CIP is rejected for this same reason. *See* Treas. Reg. § 301.6221-1T(c) (1999).

## B. The Valuation Misstatement Penalties

The second portion of Cemco's second amended petition at issue is the portion challenging the valuation misstatement penalties. Pursuant to I.R.C. § 6662 (2006), an accuracy-related penalty is imposed on certain underpayments of tax. *Id.* § 6662(a). Section 6662 imposes a penalty of twenty percent on the portion of an underpayment that is due to a "substantial valuation misstatement," and a penalty of forty percent on the portion that is due to a "gross valuation misstatement." *Id.* § 6662(e), (h). The penalties contained in section 6662 may not be compounded—that is, the percentages cannot be added, even if the portion of an underpayment at issue is attributable to more than one type of accuracy-related misconduct. *See* Treas. Reg. § 1.6662-2(c) (as amended in 2003).

Under section 6662, a substantial valuation misstatement occurs when "the value of any property (or the adjusted basis of any property) claimed on any return of tax . . . is 200 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be)." I.R.C. § 6662(e)(1)(A). In addition, the portion of the underpayment of tax attributable to the substantial valuation misstatement must exceed $5,000. *Id.* § 6662(e)(2). The definition of gross valuation misstatement is the same, except, *inter alia*, the penalty is increased to forty percent and the amount claimed on the tax return must be 400 percent or greater of the amount determined to be the correct value or adjusted basis. *Id.* § 6662(h)(2).

Cemco's second amended petition challenges the valuation misstatement penalties on the basis that the underpayment of tax alleged in the FPAA is not attributable to a misstatement of value. Second Am. Pet. ¶¶6b-6c. In support of its motion for summary

judgment, Cemco elaborates on this theory, arguing that there is no dispute over the value of the options. According to Cemco, "there is only a dispute over whether the applicable legal rule requires a sold (or 'short') option to be taken into account in determining the *adjusted basis* of the distributed and contributed property." Pet. Mem. Supp. Summ. J. 10. Because the underpayment of tax does not result from an incorrect valuation, Cemco contends, a valuation misstatement penalty cannot be imposed as a matter of law.

In order for Cemco to prevail on this theory, it must overcome the clear statutory language of section 6662, which, as demonstrated above, states that valuation misstatements include highly inflated adjusted bases. I.R.C. § 6662(e)(1)(A). To do so, Cemco asks the court to find import in the parentheses placed around the words "adjusted basis" the first time they appear in the statute. *Id.* Cemco points to the legislative history of the predecessor to section 6662, I.R.C. § 6659 (2006), *repealed by* Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, noting that the legislative history to the earlier section demonstrates that it was primarily enacted to deal with problems related to the valuation of property. Cemco argues that section 6659 did not contain parentheses around the words "adjusted basis," and suggests that their addition in section 6662 relegated that phrase to a merely illustrative or clarifying rule. According to Cemco, a misstatement of "adjusted basis" should be punishable under section 6662 only if a misstatement of value "is embedded in a misstatement of adjusted basis." Pet. Mem. Supp. Summ. J. 15. In other words, Cemco contends that value must be "a predicate for determining the adjusted basis of property" for the valuation misstatement penalty to apply to a misstatement of adjusted basis under section 6662. *Id.*

While Cemco makes a valiant effort to overcome the language of section 6662, it has included nothing in its briefs to indicate an interpretation such as it describes was intended. It is worth pointing out that the text of section 6659 was very similar to that currently contained in section 6662: "there is a valuation overstatement if the value of any property, or the adjusted basis of any property, claimed on any return exceeds 150 percent of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be)." I.R.C. § 6659. Cemco has presented no materials indicating why the parentheses were added in section 6662, and the court is unwilling to read adjusted basis out of the statute, as Cemco asks, absent a clear indication.[8] As respondent points out, other courts have likewise been unwilling to do so. *See, e.g.*, *Santa Monica Pictures, LLC v. Comm'r*, 89 T.C.M. (CCH) 1157 (2005) (finding that Congress specifically included underpayments of tax due to inflated adjusted basis in the definition of "valuation misstatement"). Accordingly, Cemco's motion for summary judgment as to paragraphs 6b and 6c of its second amended petition is denied. As the valuation argument outlined above is the only contention regarding the valuation penalties raised in Cemco's second amended petition, respondent's motion for summary judgment as to paragraphs 6b and 6c is granted. As there is no dispute that the adjusted basis of the euros reported by Cemco on its year 2000 tax return is 400 percent or more greater than the amount determined by the IRS to be the correct basis, I.R.C. § 6662(h)(2), a penalty of forty percent will apply to the portion of Cemco's underpayment of tax attributable to Cemco's gross valuation misstatement, *see* Treas. Reg. § 1.6662-2(c).

---

[8] Cemco points to *Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001), where the United States Supreme Court determined that a parenthetical phrase which was in conflict with the Congressional intention apparent in the natural language of the words outside the parentheses was merely illustrative of the words outside of the parentheses. In contrast with *Chickasaw Nation*, however, the words "adjusted basis" found inside the parentheses in I.R.C. § 6662e)(1)(A) (2006) do not conflict with the language outside the parentheses.

### III. CONCLUSION

For the foregoing reasons, Cemco's motion for summary judgment is denied and respondent's motion for summary judgment is granted. The parties are ordered to appear before the court on the date stated in the attached minute order to inform the court regarding what additional steps, if any, must be taken in this case.

ENTER:

/s/
Joan B. Gottschall
United States District Judge

DATED: March 27, 2007